UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

MICHAEL SANTIAGO,

    Plaintiff,

v.

    Case No: 26-CV-0357

    JURY TRIAL DEMANDED

GORDON FOOD SERVICE, INC.,

    Defendant.

## COMPLAINT

Plaintiff Michael Santiago, by and through his attorneys, Summer Murshid and Chris Donahoe, of Hawks Quindel, S.C., hereby states his Complaint against Defendant Gordon Food Service, Inc., ("GFS").

## NATURE OF THE CASE

Plaintiff Michael Santiago was a long-term, high-performing employee of GFS who was terminated immediately after reporting racial harassment, insisting on human resources involvement in the ongoing harassment, and experiencing an acute medical episode related to his known disability.

Mr. Santiago brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, seeking reinstatement at GFS, in his same, or a substantially similar, position, back pay, compensatory, punitive damages, and attorney's fees and costs for

GFS's violations of Mr. Santiago's right to equal employment, and unlawful discriminatory and retaliatory employment practices against him. GFS's discriminatory, retaliatory and otherwise unlawful conduct was knowing, malicious, willful and wanton and/or showed reckless disregard for Mr. Santiago and has caused and continues to cause him to suffer substantial economic and non-economic damages, severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction under 28 U.S.C. § 1331 because this case presents a federal question under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq* (the "ADA").

2. Venue in the District is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the unlawful employment practices alleged herein.

## PARTIES

3. Michael Santiago is an adult resident of the State of Wisconsin.

4. Defendant GFS is a corporation with a location in Kenosha, Wisconsin at 10901 38th St., Kenosha, WI, 53144.

## CONDITIONS PRECEDENT

5. All conditions precedent to the institution of this lawsuit have been fulfilled.

6. Prior to the filing of this Complaint, on September 6, 2025, Mr. Santiago filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the Americans with Disabilities Act and Title VII by Defendant. (Charge No. 443-2024-03616).

7. On December 8, 2025, Mr. Santiago received a Notice of Right to Sue from the EEOC on Charge No. 443-2025-04313.

## FACTUAL BACKGROUND

8. Mr. Santiago began his employment with GFS as a Packer in the Kenosha warehouse on June 27, 2021.

9. At the time he was hired, Mr. Santiago disclosed that he had epilepsy, which caused seizures.

10. Mr. Santiago is an American citizen of Puerto Rican descent.

11. Mr. Santiago was selected as a certified trainer, a designation reserved for employees with demonstrated accuracy and reliability.

12. Mr. Santiago earned $23.71 per hour plus overtime pay for hours worked over forty in a work week.

13. Throughout the course of his employment, Mr. Santiago was widely considered a skilled worker with an excellent attitude.

14. For four years, Mr. Santiago was a high-performing employee who repeatedly received accolades and strong performance reviews.

15. For example, in his 2023 performance review, his manager stated:

**WAREHOUSE PERFORMANCE REVIEW FORM**

| Job Behavior | Observation Score: | 5/5 |
|---|---|---|

**Comment:** Your attitude towards the job has been great. You came into the job understanding the high expectations and rarely speak negatively about the work in front of you. You have also been known to help your peers during your downtime. Your teammates enjoy having you on the team as does leadership.

16. In his 2024 performance review, his manager stated:

**WAREHOUSE PERFORMANCE REVIEW FORM**

| Job Behavior | Observation Score: | 5/5 |
|---|---|---|

**Comment:** You come into work with a great attitude and are ready to work. When you are here you cheer people up around you and go out of your way to help new people succeed at packing. There isn't one day where I see you in a bad mood.

17. In his 2025 performance review, (*only two months prior to his termination*) Mr. Santiago's manager, Tiffany Caston, stated the following about him:

**WAREHOUSE PERFORMANCE REVIEW FORM**

| Job Behavior | Observation Score: | 5/5 |
|---|---|---|

**Comment:** You come into work with a great attitude and are ready to work. When you are here you cheer people up around you and go out of your way to help new people succeed at packing. There isn't one day where I see you in a bad mood.

18. In that same review, Ms. Caston stated:

**Review Summary:**
Santiago you really are capable of great things when you set your mind to it. You really did step up from a packer to now being on the floor and being back up trailer release. You come into work with a positive attitude and always strive to help out your fellow team mates. You never hesitate helping out wherever is needed. You are always on top of trailer release and making sure merge continues running. Keep up the good work. I can't wait to see what you have accomplished when we sit done on your 5 year review.

19. In late July 2025, Mr. Santiago witnessed coworker Kevin Singer berate another Hispanic employee and then direct a racially charged statement toward Mr. Santiago, telling him to "go back to your country" and "you shouldn't even be here, how did you get here."

20. This incident occurred in the presence of other GFS employees and leads.

21. Mr. Santiago promptly reported the incident to his manager, Ms. Caston.

22. At the time Mr. Santiago reported this incident, Ms. Caston advised she would "take care of it."

23. Upon information and belief, no corrective action was taken against Mr. Singer.

24. On or about August 21, 2025, Mr. Singer again targeted Mr. Santiago, this time calling him a racial slur ("spic") on the warehouse floor in front of multiple witnesses.

25. Mr. Santiago immediately raised this issue with Ms. Caston, who was working in the office next to the warehouse floor.

26. Mr. Santiago also insisted, to Ms. Caston, that the matter be escalated to Human Resources because Ms. Caston had failed to adequately address the first incident that occurred in July with Mr. Singer.

27. The meeting with Human Resources, prompted by Mr. Santiago's request to escalate the matter, took place on August 25, 2025.

28. At the start of the meeting, the Human Resources representative, Melissa Espinoza, advised that it was company policy to record the meeting and began recording on her computer.

29. During the meeting, Ms. Espinoza and Ms. Caston focused not on the repeated racial slurs Mr. Singer used, but instead on Mr. Santiago's emotional response to being harassed by Mr. Singer.

30. Ms. Espinoza specifically as Mr. Santiago words to the effect of "what did you do to make him call you a spic?"

31. This question from Ms. Espinoza prompted a very emotional reaction from Mr. Santiago.

32. As tension in the meeting escalated, Mr. Santiago explicitly warned that he was at risk of having a seizure due to stress from meeting environment.

33. Ms. Espinoza instructed Mr. Santiago that he could take a "mental health day."

34. Mr. Santiago agreed that was the best course so that he would not experience a level of stress sufficient to trigger a seizure.

35. Mr. Santiago left the meeting with Ms. Espinoza and Ms. Caston, advised his lead that he was taking a mental health day per HR's instructions and then went to his car.

36. Ms. Caston called him while he remained in the parking lot in his car and told him he should come back in to work and it "doesn't have to be like this," or words to that effect.

37. Mr. Santiago responded that he agreed it should not have required a meeting with HR and he wished she should have addressed the matter with Mr. Singer in July. He also stated he would take his mental health day and see Ms. Caston tomorrow.

38. On August 26, 2025, when he reported to work the next day, Mr. Santiago's security card did not work to allow him to enter the building.

39. When he called Ms. Caston to advise her and ask for assistance with his security card, she informed him that GFS had "come to the conclusion to part ways."

40. GFS did not provide Mr. Santiago with a basis for his termination at the time he was fired on August 26, 2025.

41. GFS later alleged in unemployment proceedings that Mr. Santiago was insubordinate but failed to produce any evidence supporting the allegations of insubordination.

42. Upon information and belief, Mr. Kevin Singer remains employed by GFS and was not subject to discipline or termination for his discriminatory comments.

### FIRST CAUSE OF ACTION
### (Discrimination in Violation of Title VII)

43. Mr. Santiago reasserts and incorporates by reference all previous paragraphs set forth herein.

44. GFS is an employer as defined under Title VII. 42 U.S.C. § 2000e.

45. GFS has discriminated against Mr. Santiago on the basis of his race and national origin in violation of Title VII by, *inter alia*, denying him the same terms and conditions of employment available to employees who are white, including but not limited to terminating him for alleged insubordination but allowing a white employee who engaged in discriminatory behavior to remain employed. GFS also denied Mr. Santiago the opportunity to work in an employment environment free of unlawful discrimination due to his race and national origin.

46. As a direct and proximate result of GFS's unlawful and discriminatory conduct in violation of Title VII, Mr. Santiago has suffered and continues to suffer monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

47. As a direct and proximate result of GFS's unlawful discriminatory and harassing conduct in violation of Title VII, Mr. Santiago has suffered and continues to suffer, severe mental anguish and emotional distress, including but not limited depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

48. Defendant's unlawful discriminatory and harassing conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Mr. Santiago, and was committed with the conscious disregard of Mr. Santiago's civil rights, entitling Mr. Santiago to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

49. Mr. Santiago reasserts and incorporates by reference all previous paragraphs set forth herein.

50. GFS is an employer as defined under Title VII. 42 U.S.C. § 2000e.

51. In July 2025, on August 21, 2205 and on August 26, 2025, Mr. Santiago engaged in protected activity by opposing and/or complaining of discriminatory practices against himself and his colleagues at the hands of Mr. Singer. 42 U.S.C. § 2000(e)-3(a).

52. In July 2025, on August 21, 2025 and on August 26, 2025, Mr. Santiago had a good faith, reasonable belief that Mr. Singer had engaged in discriminatory conduct toward him and his colleagues and reported Mr. Singer's behavior to his supervisor, Tiffany Caston, and Human Resources representative, Melissa Espinoza, based on his good faith, reasonable belief.

53. GFS retaliated against Mr. Santiago in violation of Title VII for opposing and/or complaining of GFS's discriminatory practices against himself and his colleagues at the hands of Mr. Singer, and terminated his employment, all in retaliation for his complaints about discriminatory behavior, a hostile work environment and harassment by Kevin Singer, which Mr. Santiago believed in good faith represented a violation of law. 42 U.S.C. § 2000(e)-3(a).

54. As a direct and proximate result of GFS's retaliatory conduct in violation of Title VII, Mr. Santiago has suffered and continues to suffer monetary and/or

economic harm for which he is entitled to an award of monetary damages and other relief.

55. As a direct and proximate result of GFS's unlawful and retaliatory conduct in violation of Title VII, Mr. Santiago has suffered and continues to suffer, severe mental anguish and emotional distress, including but not limited depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

56. GFS's unlawful and retaliatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Mr. Santiago, and was committed with conscious disregard of Mr. Santiago's civil rights, entitling Mr. Santiago to an award of punitive damages.

### THIRD CAUSE OF ACTION
### (Retaliation in Violation of the ADA)

57. Mr. Santiago reasserts and incorporates by reference all previous paragraphs set forth herein.

58. GFS is an employer as defined under the ADA. 42 U.S.C. §§ 12111,12112.

59. Mr. Santiago is an individual with a disability as defined in 42 U.S.C. §12111, in that he has epilepsy.

60. At all times material to this Complaint, Mr. Santiago was an individual with a disability.

61. Mr. Santiago disclosed he was at risk of having a seizure during his meeting with Human Resources Representative, Melissa Espinoza, and his supervisor, Tiffany Caston, on August 25, 2025 due to the stress he was experiencing in the meeting.

62. He was advised in that meeting by Ms. Espinoza that he could take a mental health day and he agreed to do so.

63. On August 26, 2026, he was notified by Ms. Caston, that he was terminated; no reason was provided.

### REQUEST FOR RELIEF

WHEREFORE, Mr. Santiago seeks the following relief as provided by law:

A. An Order finding that GFS violated Title VII;

B. An Order finding that GFS violated the ADA;

C. An Order directing GFS to make Mr. Santiago whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

D. An Order directing GFS to make Mr. Santiago whole by providing compensatory and/or liquidated damages to compensate his for past and future non-pecuniary losses including, but not limited to, emotional pain, suffering, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, inconvenience, and mental anguish resulting from the

unlawful practices complained of in the foregoing paragraphs in amounts to be determined at trial;

E. An Order directly GFS to reinstate Mr. Santiago to his same or a substantially similar position;

F. An award of punitive damages;

G. Costs and reasonable attorney's fees in amounts to be determined by the Court in accordance with 42 U.S.C. § 12101, *et. seq.*, and;

H. Such other further legal and equitable relief as the Court may deem appropriate.

Dated: March 4, 2026.

                                         Respectfully submitted,

*s/ Summer H. Murshid*
Summer H. Murshid SBN 1075404
Christine A. Donahoe SBN 1092282
*Attorneys for Plaintiff*

**Hawks Quindel, S.C.**
5150 N. Port Washington Road
Suite 243
Milwaukee, WI 53217
Telephone: (414) 271-8650
Fax: (414) 207-6079
Email(s):   smurshid@hq-law.com
                cdonahoe@hq-law.com